# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **DONALD EUGENE CASEY,** | ) | CASE NO. 7:18CV00495 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| **J. A. WOODSON, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Donald Eugene Casey, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials unfairly punished him for requesting mental health treatment. Presently before the court is the defendants' motion to dismiss and Casey's response thereto, which the court construes as presenting amendments to the complaint. After review of the record, the court concludes that the motion to dismiss must be granted in part and denied in part.

I.

At the time his claims arose, Casey was confined at Augusta Correctional Center ("Augusta"). On August 24, 2018, at about 9:00 a.m., another inmate assaulted and then spit on Casey. Casey did not retaliate against his assailant. Officer Carper in the control booth was browsing on a computer and did not witness the assault or intervene to help Casey, but the assault was recorded by prison surveillance cameras.

After the assault, Casey began "experiencing vivid and violent thoughts of manic proportions." Compl. ¶ 14, ECF No. 1. On August 25, 2018, about 8:00 a.m., Casey went to the medical unit to ask for mental health services. He was told that no one on the mental health staff was available to speak with him until August 29, 2018. Lieutenant ("Lt.") J. E. Scott then met

with Casey, who "tried to explain about the assault and the thoughts that were triggered and prevalent in [his] mind." Id. at ¶ 15. He told Scott that he was experiencing vivid images of harm coming to the prisoner who had assaulted and spit on him. He "express[ed] his urgent and immediate need for help to avoid any further confrontation with" the assaultive inmate. Id. Lt. Scott contacted Ms. Wilson in the mental health services unit and explained Casey's situation to her. She "did not recommend any immediate action and stated that she would speak with [Casey] on August 29, 2018." Id. at ¶ 16. Lt. Scott then assigned Casey to a single cell in M2 Building, so that he would not have to return to the housing unit where he had been assaulted.

About 9:30 a.m., Casey was called to the watch office, where the Officer in Charge ("OIC"), Captain ("Capt.") W. J. Whitt, questioned him in an "overly aggressive" manner, exhibiting "a prejudicial demeanor" toward Casey. Id. at ¶ 18. Capt. Whitt ordered that Casey be placed in the restrictive housing unit "in a strip cell with nothing but a tee shirt, undershorts, and socks, even though [he] posed no threat of harm to himself." Id. at 6. The captain then ordered that Casey's shirt and socks be taken away. Major Sampson approved these measures, which placed Casey "under extreme duress." Id. at ¶ 21. "At no time did Ms. Wilson nor anyone else from Mental Health Services order [Casey] to be placed into a strip cell and under a fifteen (15) minute watch." Id. at ¶ 22.

At about 4:00 p.m., while Casey was on suicide watch, an officer served him with a disciplinary charge, Offense Code 100/1980, threaten to commit/killing or attempt to kill any person. The reporting officer listed on the Disciplinary Offense Report ("DOR") was Lt. Scott, and Capt. Whitt also signed the document. VDOC Operating Procedure 861.1 requires that before a DOR is served on an inmate in special housing for mental health reasons (such as suicide watch), the OIC must contact a qualified mental health professional for an assessment of

the inmate's ability to understand a penalty offer or participate in a hearing. See Brief Opp'n Ex. E, ECF No. 31-1. No one provided Casey with these protections on August 25, 2018. Although Casey "was not mentally nor emotionally cognizant at the time," he "signed a penalty offer accepting the complete loss of 'all' good time credits." Compl. ¶ 24, ECF No. 1. Casey contends that the disciplinary charge was punishment or retaliation for his request for mental health treatment. The loss of his good time will cause Casey to serve a year and a half longer in prison than he would have without the disciplinary charge.

Casey appealed his disciplinary charge and penalty to the warden, explaining that he had been charged for statements he made while experiencing a psychological episode and that he had accepted the penalty offer under extreme duress, before being assessed by mental health and without understanding his due process rights. See Brief Opp'n Ex. B, ECF No. 31-1. Casey never received the warden's response to his appeal (which is not in the record), but it apparently found that a preponderance of the evidence supported the charge that Casey had threatened to harm the inmate who had assaulted him. Even without the warden's response, Casey pursued a subsequent appeal to the regional ombudsman, who merely upheld the warden's rejection of the initial appeal.

In early September of 2018, Casey attended a classification hearing. Defendant Lawhorn, ignoring the mental health aspects of Casey's disciplinary charge, used the charge to support her recommendation to raise his security level points from zero to around fifty, placing him into Security Level 5. Despite the absence of prior violent disciplinary charges during his more than six years in the VDOC, officials recommended that he be transferred from Augusta to a higher security prison. Unit Manager Back, who had approved the penalty offer, told Casey later, "The only thing you did wrong was sign a penalty offer." Compl. ¶ 26, ECF No. 1. Ms.

Wilson told Casey that he should not have been given a disciplinary charge at all. Casey remained in restrictive housing until September 21, 2018, when he was transferred to Sussex II State Prison, which is a Security Level 4 facility. Casey lost his work assignment in the shoe plant at Augusta and other privileges, such as recreation.

Casey filed his § 1983 complaint in October 2018. Liberally construing Casey's allegations, his complaint as amended asserts these claims: (1) defendant Carper was negligently inattentive on August 24, 2018, allowing Casey to be assaulted by another inmate; (2) on August 25, 2018, Casey asked for mental health care to help him avoid injuring another inmate, and Lt. Scott, Capt. Whitt, and Major Sampson denied him a mental health evaluation before placing him in a strip cell, bringing a disciplinary charge against him, and allowing him to enter into an excessive penalty offer; (3) by these same actions, these defendants retaliated against Casey for exercising his right to request mental health treatment; (4) by these same actions, these defendants caused Casey to be convicted of a disciplinary charge and penalized for it without due process; (5) defendants Back and Woodson approved or upheld the charge and Casey's incompetent acceptance of the penalty offer instead of correcting the violations that led to its entry without a mental health assessment; and (6) Lawhorn violated due process by failing to consider Casey's mental health issues when increasing his security classification and recommending his transfer. As relief in his § 1983 action, Casey seeks to have the threat charge expunged; to have his lost good conduct time restored; to receive a declaratory judgment that the charge was unlawful and the punishment was excessive, when there was no evidence that he intended to harm anyone; and to recover his costs for the lawsuit and "any additional relief this court deems just, proper, and equitable." Id. at ¶ 49.

II.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.[1]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). To hold an official liable under § 1983, the plaintiff must state facts to affirmatively show that the officer acted personally to deprive the plaintiff of, or violate his, constitutional rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 93 (2007).

The defendants' motion to dismiss first argues that Casey's complaint failed to allege the personal involvement of several defendants. Casey's amendments to the complaint clarify how each defendant was personally involved in the alleged violations, however.

The defendants next argue that Casey's allegations do not state a claim that the conditions imposed on him while in the strip cell violated his rights under the Eighth Amendment. "Only

---

[1] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). Thus, such a claim requires the inmate to prove that the challenged conditions, viewed objectively, caused a sufficiently serious deprivation of a basic human need and, subjectively, the defendants acted with deliberate indifference—they knew of and disregarded the risk of such harm. Id. In other words, "for prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition." Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1993). Casey's allegations do not indicate any respect in which the strip cell conditions themselves deprived him of basic human needs, caused him physical injury, or aggravated his already compromised emotional state. Thus, the court will grant the motion to dismiss as to any claim that the conditions Casey experienced in the strip cell violated his Eighth Amendment rights.

The court also finds that Casey fails to state a § 1983 claim against Officer Carper. Prison officials have a constitutional duty to take reasonable measures to protect inmates from attacks by other inmates. Makdessi v. Fields, 789 F.3d 126, 132-33 (4th Cir. 2015). Even so, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." Id. Rather, a failure to protect claim requires a showing that the officer acted with deliberate indifference.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). An officer's negligent or careless supervision of inmate activity, without more, cannot result in liability under the deliberate indifference standard. Strickland v. Halsey, 638 F. App'x 179, 187 (4th Cir. 2015).

Casey does not allege that Carper, in the control booth on August 24, 2017, knew any facts before the assault occurred indicating a risk that the other inmate would assault Casey. Moreover, Casey himself states that Carper did not see the assault, because of his alleged negligence. As such, the court finds no claim that Carper had any reasonable opportunity to intervene to assist Casey before the assault was completed. Carper's supposed carelessness—in monitoring his computer instead of inmate activity—is not deliberate indifference as required for a constitutional claim. Accordingly, the court will grant the motion to dismiss as to the claim against Carper.

Finally, the court also finds no due process claim against defendant Lawhorn arising from Casey's allegations that she participated in the classification proceedings that led to an increase in his security level and his transfer to Sussex II, where he had fewer privileges and no prison job. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

As a convicted prisoner, Casey does not have an inherent, constitutionally protected liberty interest in avoiding more restrictive security classifications. Id. at 221-22. A state-created liberty interest may exist, however, if Casey can (a) "point to a Virginia law or policy

providing him with an expectation of avoiding" a particular classification status or housing assignment, Prieto, 780 F.3d at 252, and (b) show that the undesirable status or assignment "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Sandin v. Connor, 515 U.S. 472, 484 (1995), or "will inevitably affect the duration" of his confinement. Id. at 487.

Casey can make no such showing as to his reclassification and transfer to Sussex II. Inmates have no constitutional right to be housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224-25 (1976) ("The . . . decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause. . . . The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons."). Courts have also held that Virginia's classification scheme governing prisoners' custody, security, and good conduct earning levels does not create a liberty interest, since an inmate's status in each of these areas is subject to change, based on his own behavior and the discretion of prison officials. Oliver v. Powell, 250 F. Supp. 2d 593, 605 (E.D. Va. 2002); Garrett v. Angelone, 940 F. Supp. 2d 933, 943 (W.D. Va. 1996). In addition, Casey has no protected liberty interest in maintaining his prison job. See Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978); Awalt v. Whalen, 809 F. Supp. 414, 416-17 (E.D. Va. 1992). Finally, Casey does not demonstrate that his reclassification or transfer had any impact on the length of his term of confinement. Because Casey thus had no protected liberty interest at stake during the classification proceedings, he had no federal right to particular procedural protections in those proceedings. Consequently, he states no actionable § 1983 due process claim against Lawhorn, and therefore, the court will grant the motion to dismiss as to this claim.

The court must deny the motion to dismiss as to Casey's other claims, however. His complaint as amended states possible constitutional claims—a claim for deliberate indifference to his serious medical need for mental health treatment, see DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) ("deliberate indifference to an inmate's serious medical needs" violates his Eighth Amendment rights, and "courts treat an inmate's mental health claims just as seriously as any physical health claims"); a claim for the imposition of a disciplinary charge and penalty in retaliation for his exercise of a constitutional right, Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (holding that retaliation requires inmate to show he engaged in protected First Amendment activity, defendant took action adversely affecting or chilling his exercise of his First Amendment rights, and inmate's protected activity caused defendant's conduct); and a claim for convicting and punishing him for a disciplinary offense with no evidence of a threat and while he was in need of mental health care, in violation of due process, see, e.g., Superintendent Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985) (requirements of due process are met when "the findings of the prison disciplinary board are supported by some evidence in the record" to support finding that inmate committed offense charged); Harris v. Driver, No. CIV.A. 3:07CV163, 2008 WL 4279636 (N.D.W. Va. Sept. 16, 2008) (considering claimed due process violation by inmate alleging that disciplinary hearing should not have been conducted without first providing him a mental health assessment).

III.

In conclusion, for the reasons stated, the court will grant the motion to dismiss as to the claims against defendants Carper and Lawhorn and as to any claim concerning conditions in strip cell status. As to all other claims, however, the court will deny the motion to dismiss, direct the

defendants to answer, and schedule the case for a jury trial. An appropriate order will enter herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 26th day of February, 2020.

/s/ Conrad
Senior United States District Judge