IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DONALD EUGENE CASEY, | ) | CASE NO. 7:18CV00495 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| J. A. WOODSON, ET AL., | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Donald Eugene Casey, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials unfairly disciplined him for requesting mental health treatment. The court previously denied the defendants' motion to dismiss. The defendants have now moved for summary judgment. Casey has also moved to amend the complaint. After review of the record, the court concludes that the defendants' motion for summary judgment must be granted in part and denied in part. The motion to amend will be taken under advisement.

I.

The court summarized Casey's allegations and claims in its prior opinion denying the defendants' motion to dismiss in part:

> At the time his claims arose, Casey was confined at Augusta Correctional Center ("Augusta"). On August 24, 2018, at about 9:00 a.m., another inmate assaulted and then spit on Casey. Casey did not retaliate against his assailant. . . .
> After the assault, Casey began "experiencing vivid and violent thoughts of manic proportions." Compl. ¶ 14, ECF No. 1. On August 25, 2018, about 8:00 a.m., Casey went to the medical unit to ask for mental health services. He was told that no one on the mental health staff was available to speak with him until August 29, 2018. Lieutenant ("Lt.") J. E. Scott then met with Casey, who "tried to explain about the assault and the thoughts that were triggered and prevalent in [his] mind." Id. at ¶ 15. He told Scott that he was experiencing vivid images of harm coming to the prisoner who had assaulted and spit on him. He "express[ed] his urgent and immediate need for help to avoid any further confrontation with" the assaultive inmate. Id. Lt. Scott contacted Ms. Wilson in the mental health services unit and

explained Casey's situation to her. She "did not recommend any immediate action and stated that she would speak with [Casey] on August 29, 2018." Id. at ¶ 16. Lt. Scott then assigned Casey to a single cell in M2 Building, so that he would not have to return to the housing unit where he had been assaulted.

About 9:30 a.m., Casey was called to the watch office, where the Officer in Charge ("OIC"), Captain ("Capt.") W. J. Whitt, questioned him in an "overly aggressive" manner, exhibiting "a prejudicial demeanor" toward Casey. Id. at ¶ 18. Capt. Whitt ordered that Casey be placed in the restrictive housing unit "in a strip cell with nothing but a tee shirt, undershorts, and socks, even though [he] posed no threat of harm to himself." Id. at 6. The captain then ordered that Casey's shirt and socks be taken away. Major Sampson approved these measures, which placed Casey "under extreme duress." Id. at ¶ 21. "At no time did Ms. Wilson nor anyone else from Mental Health Services order [Casey] to be placed into a strip cell and under a fifteen (15) minute watch." Id. at ¶ 22.

At about 4:00 p.m., while Casey was on suicide watch, an officer served him with a disciplinary charge, Offense Code 100/198[D], threaten to commit/killing or attempt to kill any person. The reporting officer listed on the Disciplinary Offense Report ("DOR") was Lt. Scott, and Capt. Whitt also signed the document. [Virginia Department of Corrections ("VDOC")] Operating Procedure [(OP")] 861.1 requires that before a DOR is served on an inmate in special housing for mental health reasons (such as suicide watch), the OIC must contact a qualified mental health professional for an assessment of the inmate's ability to understand a penalty offer or participate in a hearing. See Brief Opp'n Ex. E, ECF No. 31-1. No one provided Casey with these protections on August 25, 2018. Although Casey "was not mentally nor emotionally cognizant at the time," he "signed a penalty offer accepting the complete loss of 'all' good time credits." Compl. ¶ 24, ECF No. 1. Casey contends that the disciplinary charge was punishment or retaliation for his request for mental health treatment. The loss of his good time will cause Casey to serve a year and a half longer in prison than he would have without the disciplinary charge.

Casey appealed his disciplinary charge and penalty to the warden, explaining that he had been charged for statements he made while experiencing a psychological episode and that he had accepted the penalty offer under extreme duress, before being assessed by mental health and without understanding his due process rights. See Brief Opp'n Ex. B, ECF No. 31-1. Casey never received the warden's response to his appeal (which is not in the record), but it apparently found that a preponderance of the evidence supported the charge that Casey had threatened to harm the inmate who had assaulted him. Even without the warden's response, Casey pursued a subsequent appeal to the regional ombudsman, who merely upheld the warden's rejection of the initial appeal.

In early September of 2018, Casey attended a classification hearing. Defendant Lawhorn, ignoring the mental health aspects of Casey's disciplinary charge, used the charge to support her recommendation to raise his security level points from zero to around fifty, placing him into Security Level 5. Despite the absence of prior violent disciplinary charges during his more than six years in the VDOC, officials recommended that he be transferred from Augusta to a higher

2

> security prison. Unit Manager Back, who had approved the penalty offer, told Casey later, "The only thing you did wrong was sign a penalty offer." Compl. ¶ 26, ECF No. 1. Ms. Wilson told Casey that he should not have been given a disciplinary charge at all. Casey remained in restrictive housing until September 21, 2018, when he was transferred to Sussex II State Prison, which is a Security Level 4 facility. Casey lost his work assignment in the shoe plant at Augusta and other privileges, such as recreation.

Casey v. Woodson, No. 7:18CV00495, 2020 WL 927690, at *1-2 (W.D. Va. Feb. 26, 2020); see also Br. Opp'n Mot. Dismiss Ex. C, ECF No. 31-1 (listing offense code number as "100/198D").[1]

The court granted the defendants' motion to dismiss in part, but allowed the following claims to go forward:

> [1] a claim for deliberate indifference to his serious medical need for mental health treatment...; [2] a claim for the imposition of a disciplinary charge and penalty in retaliation for his exercise of a constitutional right...; and [3] a claim for convicting and punishing him for a disciplinary offense with no evidence of a threat and while he was in need of mental health care, in violation of due process.

Casey, 2020 WL 927690, at *4. As relief in this § 1983 action, Casey seeks to expunge the threat charge, which would restore his lost good conduct time; to obtain a declaratory judgment that the charge was unlawful and the punishment was excessive without any evidence of intent to harm anyone; to recover costs for the lawsuit; and to obtain "any additional relief this court deems just, proper, and equitable." Compl. ¶¶ 46-49, ECF No. 1.

The defendants have now moved for summary judgment on the grounds that Casey failed to exhaust administrative remedies as to two of his remaining claims and that he has not alleged

---

[1] The court notes that the Disciplinary Offense Report ("DOR") filed against Casey on August 25, 2018, described the offense conduct as follows:
> Casey made the following statements, that he was up all night thinking about how to kill offender Joyner ... for slapping him in the face and also spitting on [him]. Offender Casey stated that he had two sharpen[ed] pencils and was waiting on offender Joyner to come to his cell, because he was going to kill him.... Offender Casey also stated that he wanted to shove offender Joyner['s] head into the metal slot this morning until he stop[ped] breathing, and all he can think about is that this 'mother f***er die' and all [he] want[s] to do is see this no good mother die and [he could] not get this out of [his] mind[. He just doesn't] want to run up [his] time but [Joyner left him] no choice but to kill him for what he did.

Br. Opp'n Mot. Dism. Ex. I, ECF No. 31-1.

3

physical injury or standing for injunctive relief as to the third claim. In support of their motion, the defendants submit the affidavit of S. Conner, the Agency Management Analyst and Acting Grievance Coordinator at Augusta. Casey has responded to the defendants' motion and evidence, making this matter ripe for consideration.

II.

The Prison Litigation Reform Act provides in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints. Mem. Supp. Mot. Summ. J. Conner Aff. Encl. A, ECF 60-1. OP 866.1 provides that all issues which affect the grievant personally are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the VDOC.

This grievance procedure requires that, before submitting a formal grievance, an inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. He

4

may do so by submitting an Informal Complaint form to the Grievance Department. The Informal Complaint is then forwarded to the appropriate staff for investigation and a written response. If the inmate is dissatisfied with the response, he must submit a Regular Grievance on the issue within thirty days after the event of which he complains, attaching the Informal Complaint.

A Regular Grievance that meets the criteria for acceptance is logged into the computer data base on the day it is received. If the Regular Grievance does not meet the criteria for acceptance, a grievance official will complete the "intake" section on the back of the Regular Grievance form, mark the reason for the rejection (such as an expired time limit or addressing more than one issue), and return the Regular Grievance to the inmate with instructions on how to correct and resubmit the form if feasible. If the inmate desires a review of the intake decision, he must send the grievance form to the Regional Ombudsman within five calendar days. However, pursuing that intake appeal alone does not constitute exhaustion. Rather, to satisfy the exhaustion requirement, the grievance must be accepted into the grievance process and appealed through the highest eligible level of review. OP 866.1(IV)(O).

Once a Regular Grievance is accepted for review, officials investigate the inmate's contentions and issue a Level I written response. If dissatisfied with that response, the inmate may appeal for Level II review. All accepted Regular Grievances can receive these two levels of review, and some are eligible for a Level III review.

On September 4, 2018, Casey filed two Informal Complaints (ACC-18-INF-01947 and 01948). See Mem. Supp. Mot. Summ. J. Conner Aff. Encl. D and E. The first informal complaint (ACC-18-INF-01947) alleged that on August 24, 2018, Captain Whitt wrote a charge against Casey for statements he made while "experiencing . . . a severe psychological and emotional episode," based on "thoughts that were in [Casey's] head." Conner Aff. at Encl. D. On this form,

5

Casey denied that he threatened or physically approached anyone and insisted he was "merely seeking help from mental health due to [his] breakdown to avoid confrontation and for seeking that help [he] was unjustly and severely punished." Id. The response to this Informal Complaint advised Casey that inmates cannot challenge disciplinary charges through the grievance procedure.

The second Informal Complaint Casey filed on September 4, 2018, (ACC-18-INF-01948) was directed to the medical administrator. It stated that for nearly one year, Casey had been requesting to speak with someone in the mental health department, most recently on July 15, 2018. Casey alleged that the lack of mental health counseling was "directly responsible for [his] breakdown on 8-25-18." Id. at Encl. E. Casey withdrew this informal complaint on September 14, 2018.

On September 7, 2018, Casey filed another Informal Complaint (ACC-18-INF-01968) about the charge he received on August 25, 2018. He alleged, "My complaint is that I feel that my Constitutional Right to the First Amendment of the United States, Freedom of Speech and Expression has been violated in that on 8-25-18, when I voiced, and expressed how I was feeling about thoughts in my head I was placed in RHU in a strip cell, had my good time taken for an unjust charge, and [I've] been raised to a Level 5 security level." See Conner Aff. at Encl. F. The response advised Casey that matters regarding his disciplinary charge would need to be addressed through the separate disciplinary procedure appeals process.

The defendants contend that Augusta grievance records for Casey do not reflect that he filed any Regular Grievances or appeals alleging that the defendants' actions on August 25, 2018, constituted deliberate indifference to Casey's mental health needs or that they retaliated against him for exercise of his First Amendment rights by bringing the disciplinary charge. Casey offers

no evidence to dispute the defendants' grievance records showing that he failed to file Regular Grievances and appeals about his deliberate indifference and retaliation claims.[2]

The defendants bear the burden of proving the affirmative defense that Casey failed to exhaust available administrative remedies regarding his claims before filing suit. Jones, 549 U.S. at 216. They have done so. Casey may yet escape summary judgment under § 1997e(a) by showing that the remedies under the established grievance procedures were not "available" to him as to one or more of his claims. Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (noting that circumstances making prison grievance procedures unavailable "will not often arise"). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Casey has offered no evidence showing that he was prevented, "through no fault of his own," from pursuing an Informal Complaint, a Regular Grievance, and subsequent appeals under OP 866.1 as to his claim that defendants acted with deliberate indifference to his need for mental health treatment on August 25, 2018. Accordingly, the court concludes that the defendants are entitled to summary judgment as a matter of law under § 1997e(a) as this claim. As it is clear from the record that Casey could not now exhaust administrative remedies under the VDOC procedure as to this claim, the court will dismiss it with prejudice.

The court reaches a different conclusion as to Casey's First Amendment retaliation claim, however. In Casey's informal complaints about being charged or punished with a disciplinary infraction for his statements and thoughts, (ACC-18-INF-01947) and (ACC-18-INF-01968), Br.

---

[2] The defendants' evidence also indicates that Casey filed an Informal Complaint, a Regular Grievance, and two appeals about his claim that the August 25, 2018 incident and disciplinary charge were wrongfully used during proceedings of the Institutional Classification Authority ("ICA") to increase his security classification. See Conner Aff. at Encl. G-H. In the court's previous opinion, the court granted the defendants' motion to dismiss several of Casey's claims, including his challenge to the ICA proceedings. Therefore, the court will not discuss exhaustion of this claim or any of the other claims that no longer remain before the court.

7

Opp'n Mot. Summ. J. Attach. 2 and 3, ECF. No. 65-1, he raised, in essence, a claim of retaliation for exercising his First Amendment rights. Yet in response, officials expressly advised Casey in writing that he could not use the grievance procedure to address such claims. Rather, the responses advised him that he could only pursue those allegations through the disciplinary appeals process, which he did. Based on the Informal Complaint responses, Casey was misled to believe that the grievance procedure was unavailable to raise his retaliation claim. See Ross, 136 S. Ct. at 1860 (recognizing that if officials' misrepresentations prevent inmate from using appropriate procedure, that procedure is rendered unavailable for purposes of § 1997e(a)).

Moreover, the defendants do not argue that Casey failed to exhaust available administrative remedies under the disciplinary appeals procedure. Indeed, Casey's exhibits indicate that during that appeals procedure, he argued that he should not have been punished with a disciplinary charge for verbal statements about what he was thinking and feeling, when "[e]verything was only happening in my mind." Br. Opp'n Mot. Summ. J. Attach. 4, ECF. No. 65-1. He also states that the he accepted the penalty offer while his mental state likely prevented his understanding of the procedure or its consequences. Based on the foregoing, the court concludes that the defendants are not entitled to summary judgment as to Casey's First Amendment retaliation claim under 1997e(a) and will deny their motion as to this claim.

III.

The defendants also argue that they are entitled to summary judgment on Casey's remaining claims based on the types of relief that Casey is seeking. The court agrees that Casey cannot obtain monetary damages against the defendants in their official capacities. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding neither a state nor its officials acting in their official capacities are "persons" for purposes of § 1983). The court also agrees with the defendants' argument that Casey cannot collect compensatory damages for past emotional or psychological harms allegedly caused by the alleged retaliation or due process violations, because he has not alleged any physical harm resulting from the defendants' alleged misconduct.[3] See 42 U.S.C. §1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The court takes no position at this time on whether Casey might be entitled to recover nominal or punitive damages in this case, related to his remaining retaliation and due process claims. See Muslim v. Carmichael, No. 3:16-CV-433-FDW, 2017 WL 5490852, at *4 n. 1 (W.D.N.C. Nov. 15, 2017) (recognizing circuit split regarding whether § 1997e(e) bars recovery of punitive and nominal damages, citing other cases, with no published Fourth Circuit ruling).

In addition, the court agrees that Casey cannot achieve injunctive relief against the defendants at Augusta to prevent <u>future</u> retaliation or due process problems with disciplinary charges or proceedings. Casey is now incarcerated at a different VDOC prison facility, where these defendants (as employees of Augusta) would not be involved in new disciplinary actions

---

[3] Casey alleges that since the incident at issue, he has suffered depression and emotional distress that interferes with his sleep, and that he is "paranoid and afraid of opening up about his mental health conditions." Br. Opp'n Mot. Dismiss ¶ 26, ECF No. 31.

9

against him. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) (holding "as a general rule, a prisoner's transfer or release from a particular prison moots his claim for injunctive or declaratory relief" regarding conditions there).

The defendants also argue, however, that because of Casey's transfer, he has no standing to seek injunctive relief against the defendants to correct past harms. Specifically, they appear to argue that for lack of standing, Casey's demands for expungement of the disciplinary charge and restoration of his lost good conduct time should also be dismissed. Yet, the defendants do not offer evidence that Augusta officials would have no authority to dismiss or retry an inmate's invalidated, past disciplinary charge merely because he has been transferred to another VDOC facility. OP 866.1 does not indicate that retrials of disciplinary proceedings occur at any facility other than the institution where the underlying grievance arose. See, e.g., OP 866.1(VI)(A)(2)(b)(i) ("If the offender has been transferred, the offender should submit the Informal Complaint and subsequent grievance to the facility where the issue originated.").

Other than failure to exhaust administrative remedies and standing, the defendants do not put forward any other legal basis for dismissal of claims (2) or (3) at this time. Accordingly, the court will deny the motion for summary judgment as to these claims.

IV.

Casey has recently submitted a motion for leave to file an amendment to his complaint to add claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act"). The defendants have responded to this motion, arguing that the proposed amendment is futile. Specifically, they assert that Casey's ADA and Rehab Act claims are not actionable against the defendants he has named in this § 1983 action, that such claims are filed outside the applicable statute of limitations, and that they cannot relate back to the § 1983 claims in the initial complaint.

10

Casey has not yet responded to the defendants' arguments. Accordingly, the court will take the motion under advisement at this time.

V.

In conclusion, for the reasons stated, the court will grant the defendants' motion for summary judgment based on Casey's failure to exhaust administrative remedies as to his claim alleging denial of mental health treatment. The court will also grant the motion as to Casey's claims for monetary damages against the defendants in their official capacities, his claims for injunctive relief regarding new retaliation or disciplinary issues in the future, and his claims for compensatory damages for emotional or psychological harm. However, the court will deny the motion for summary judgment as to Casey's other claims and types of relief sought. Thus, remaining before the court are his claim (2) alleging that his disciplinary charge was retaliation for his exercise of his First Amendment right to request mental health treatment and his claim (3) alleging that imposing the disciplinary conviction and penalty without the requested mental health assessment violated due process. The court concludes that these matters are best suited for mediation before the United States Magistrate Judge. An appropriate order will enter herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff, to counsel of record for the defendants, and to the Hon. Pamela Meade Sargent, United States Magistrate Judge.

ENTER: This 25th day of March, 2021.

/s/ Glen Conrad
Senior United States District Judge